# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1500

WALTER L. FRITZ, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal From the Board of Veterans' Appeals

(Decided     October 6, 2006     )

*Walter L. Fritz*, pro se.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel; and *Deborah A. Hoet*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and DAVIS and SCHOELEN, *Judges*.

DAVIS, *Judge*: Pro se appellant Walter L. Fritz appeals from a June 3, 2004, Board of Veterans' Appeals (Board) decision that denied him entitlement to payment or reimbursement of unauthorized private medical expenses incurred on July 7, 2001. His appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

The Board denied Mr. Fritz's claim under both 38 U.S.C. §§ 1728 and 1725. Section 1728 allows the Secretary to reimburse a veteran for certain medical expenses if the veteran was either service connected for at least one disability at the time that treatment was sought or participating in a vocational rehabilitation program. Under section 1725, the Secretary may reimburse a non-service-connected veteran for emergency medical treatment if the veteran was an active Department health-care participant and personally liable for the emergency medical treatment. On appeal, we must determine whether enrolling for treatment with a VA medical center and scheduling a future appointment constitutes receiving "care" under section 1725. Because the Board properly concluded

that Mr. Fritz was ineligible for reimbursement under section 1728 and that he had not received "care" under section 1725, we will affirm the Board's decision.

## I. BACKGROUND

Mr. Fritz served honorably in the U.S. Air Force from September 1966 to May 1971. On July 3, 2001, he traveled nearly 90 miles from his home in Enid, Oklahoma, to the Oklahoma City VA medical center and enrolled for VA medical benefits as a non-service-connected applicant. At that time, he was informed that the earliest available appointment to see a primary care physician was July 16, 2001; he scheduled an appointment for that date. A few days later, in the early morning hours of July 7, 2001, Mr. Fritz awoke with severe back and chest pains. Fearful that he might be having a heart attack, Mr. Fritz and his wife went to the local emergency room at St. Mary's Regional Medical Center (St. Mary's Hospital), where he was diagnosed with acute pancreatitis caused by a blockage of the bile duct by gallstones. The veteran was subsequently transferred to the Oklahoma City VA medical center, where his gallbladder was surgically removed. At the time of his July 2001 emergency treatment, he was not service connected for any disabilities nor was he participating in any VA rehabilitation programs. In addition, he had no private medical insurance that covered his expenses in whole or in part.

In November 2001, the Oklahoma City VA medical center denied his application for payment of expenses incurred from the July 2001 emergency medical treatment. In January 2002, Mr. Fritz filed a Notice of Disagreement with respect to that determination. He was issued a Statement of the Case in August 2002 explaining that he was ineligible to have his medical bills paid under 38 U.S.C. § 1725 because he had not received medical care from VA in the 24 months preceding emergency treatment. In October 2002, the veteran appealed to the Board. In the June 3, 2004, decision here on appeal, the Board denied his claim for payment or reimbursement of his medical expenses after concluding that he failed to qualify for reimbursement under 38 U.S.C. §§ 1728 and 1725.

On appeal, Mr. Fritz neither disputes any of the Board's factual determinations nor contends that the Board failed to obtain relevant documents in his case. He also does not contend that the Board applied the wrong law or regulations in reaching its decision. Although he does not advance any reasons why the Board's decision was wrong, Mr. Fritz asks this Court to "authorize payment

2

of the emergency room bill to St. Mary's Hospital." Appellant's Informal Brief (Br.) at 2. The Secretary asserts that he sympathizes with the veteran, but notes that under sections 1728 and 1725, Mr. Fritz is simply not eligible to have VA pay his July 2001 emergency medical expenses. Because this Court is not a Court of equity, but rather a Court of law, the Secretary argues that we are unable to award an equitable remedy to the appellant. Secretary's Br. at 6-7.

## II. ANALYSIS

Congress has authorized the Secretary to reimburse veterans for unauthorized emergency medical treatment under two statutory provisions, 38 U.S.C. § 1728 and 38 U.S.C. § 1725. Section 1728 applies only to veterans who were either service connected for at least one disability at the time that they sought treatment or who were participants in a vocational rehabilitation program. *See* 38 U.S.C. § 1728(a)(2). Section 1725 applies to non-service-connected veterans who meet certain eligibility requirements. *See* 38 U.S.C. § 1725(b). The Board denied Mr. Fritz's claim under both statutory provisions.

The Court interprets a statute de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). As in all matters involving statutory interpretation, we begin our analysis with an examination of the statutory language. *See Howe v. Smith*, 452 U.S. 473, 480 (1981); *Reiter v. Sonotone Corp.*, 422 U.S. 330, 337 (1979). "[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used,'" *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)), and we "follow the cardinal rule that a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991) (citing *Lewis v. United States*, 92 U.S. 618 (1876)), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

## A. 38 U.S.C. § 1728

In order to be eligible for payment of emergency medical expenses under section 1728, a veteran must have been service connected for at least one disability at the time that treatment was sought or have been participating in a vocational rehabilitation program. *See* 38 U.S.C. § 1728(a)(2); 38 C.F.R. § 17.120(a) (2006). The relevant portion of section 1728 provides that the Secretary may reimburse veterans for emergency medical expenses when

> such care or services were rendered to a veteran in need thereof (A) for an adjudicated service-connected disability, (B) for a non-service-connected disability associated with and held to be aggravating a service-connected disability, (C) for any disability of a veteran who has a total disability permanent in nature from a service-connected disability, or (D) for any illness, injury, or dental condition in the case of a veteran who (i) is a participant in a vocational rehabilitation program . . . , and (ii) is medically determined to have been in need of care or treatment to make possible such veteran's entrance into a course of training, or prevent interruption of a course of training, or hasten the return to a course of training which was interrupted because of such illness, injury, or dental condition. . . .

38 U.S.C. § 1728(a)(2).

Here, the Board determined that when Mr. Fritz received emergency medical treatment at St. Mary's Hospital in July 2001, he was neither service connected for any disabilities nor participating in a vocational rehabilitation program. We cannot overturn the Board's factual findings unless they are "clearly erroneous." 38 U.S.C. § 7261(a)(4); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Because the Court is not left with the definite and firm conviction that the Board committed a mistake when it determined that Mr. Fritz was neither service connected for any disabilities nor participating in a vocational rehabilitation program when he received emergency medical treatment, we hold that the Board properly concluded that Mr. Fritz was not eligible for reimbursement or payment of emergency medical expenses under section 1728.

## B. 38 U.S.C. § 1725

Section 1725 was introduced as part of the Millennium Health Care and Benefits Act, Pub. L. No. 106-117, § 111, 113 Stat. 1545 (1999), and became effective on May 29, 2000. The statute

bestows upon the Secretary the power to reimburse an "eligible," non-service-connected veteran "the reasonable value of emergency treatment furnished . . . in a non-Department facility." 38 U.S.C. § 1725(a). In lieu of reimbursing the veteran directly, the Secretary may make payment directly to the hospital or health care provider that treated the veteran. 38 U.S.C. § 1725(a)(2)(A). Under the statute, an eligible veteran is defined as "an individual who is an active Department health-care participant who is personally liable for emergency treatment furnished [to] the veteran in a non-Department facility." 38 U.S.C. § 1725(b)(1). The Secretary concedes that the veteran is personally liable for the July 2001 emergency treatment, but contends that Mr. Fritz is not an "active Department health-care participant" under section 1725.

To be considered an "active Department health-care participant" at the time of the emergency treatment, a veteran must be enrolled in the VA health care system and have received "*care* under [chapter 17 of title 38, U.S. Code,] within the 24-month period preceding the furnishing of the emergency treatment." 38 U.S.C. § 1725(b)(2)(B) (emphasis added); *see* 38 U.S.C. § 1725(b)(2)(A); 38 C.F.R. § 17.1002(e) (2006). The parties agree that Mr. Fritz was enrolled in the VA health care system at the time he received emergency medical treatment. However, the Secretary contends that the Board properly concluded that Mr. Fritz had not received medical "care" or "services" within 24 months of being treated at St. Mary's Hospital, and, thus, is ineligible to have his emergency medical expenses reimbursed or paid. We agree with the Secretary that enrolling for treatment with a VA medical center and scheduling an appointment does not constitute receiving "care" under section 1725. *See* 38 U.S.C. § 1725(b)(2)(B); 38 C.F.R. § 17.1002(e).

Congress did not offer a precise definition of "care" as it is used in section 1725. However, based on the word's plain meaning, we are able to discern Congress's intent. *Dorland's Illustrated Medical Dictionary* defines "care" as the "*services* rendered by members of the health professions for the benefit of a patient." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 298 (30th ed. 2003) (emphasis added). Moreover, in 38 U.S.C. § 1701, Congress defined "hospital *care*" as including "*medical services* rendered in the course of the hospitalization of any veteran." 38 U.S.C. § 1701(5)(A)(i) (emphases added). Congress defined "domiciliary *care*" as including "necessary

5

*medical services* and travel and incidental expenses pursuant to the provisions of section 111 of this title." 38 U.S.C. § 1701(7) (emphases added).[1]

Based on the ordinary meaning of "care" as set forth in *Dorland's Illustrated Medical Dictionary*, it is clear that "care" as used in section 1725 is synonymous and, thus interchangeable, with "medical services." In section 1701, Congress defined "medical services" as including "medical examination[s], treatment, and rehabilitative services," surgical services, dental services, optometric and podiatric services, and, among other things, preventative health services. 38 U.S.C. § 1701(6); *see* 38 C.F.R. § 17.30(a) (2006).

In the decision here on appeal, the Board found that Mr. Fritz had not received care in the 24 months preceding his July 2001 emergency medical treatment. As noted above, we cannot overturn the Board's factual findings unless they are clearly erroneous. 38 U.S.C. § 7261(a)(4); *see Gilbert*, 1 Vet.App. at 52. Based on the entire evidence in the record as well as our interpretation of the meaning of "care" under section 1725, we are not left with a definite and firm conviction that the Board committed a mistake when it concluded that Mr. Fritz had not received care in the 24 months preceding his emergency medical treatment. To the contrary, the record indicates that when Mr. Fritz enrolled in the VA health-care plan, he did not undergo a medical examination or receive treatment or medical services of any kind. Because Mr. Fritz did not receive care in the 24 months preceding his emergency medical treatment, we hold that the Board properly concluded that he was not eligible for reimbursement or payment of emergency medical expenses under section 1725.

Mr. Fritz asks this Court to grant him equitable relief by arguing that it was not his fault that he did not see a VA primary care physician prior to receiving emergency treatment at St. Mary's Hospital. He notes that he scheduled the first available appointment to see a VA primary care physician when he enrolled for benefits, but required emergency medical treatment before the scheduled appointment date. Although the Court sympathizes with Mr. Fritz's circumstances and concedes that he is a victim of unfortunate timing, this "Court is not a court of equity and cannot provide equitable relief." *Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997). Only the Secretary can

---

[1]The Court also notes that the regulation implementing section 1725 requires a veteran to have "received *medical services* under authority of 38 U.S.C. chapter 17 within the 24-month period preceding the furnishing of such emergency treatment." 38 C.F.R. § 17.1002(e) (emphasis added).

provide equitable relief to a claimant. *See Andrews v. Principi*, 16 Vet.App. 309, 317 (2002). Our hands are bound by section 1725's language, which explicitly requires a veteran to have received "care" within the preceding 24 months in order to be eligible for reimbursement or payment of emergency treatment expenses. 38 U.S.C. § 1725(b)(2); *see* 38 C.F.R. § 17.1002(e). Because the veteran did not receive such care, we can neither reverse the Board's decision, nor order equitable relief.

### III. CONCLUSION

Based on the foregoing, the June 3, 2004, Board decision is AFFIRMED.