# United States Court of Appeals for the Federal Circuit

---

**SALLY A. BURKHART,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1667

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-1334, Chief Judge Margaret C. Bartley, Judge William S. Greenberg, Judge Michael P. Allen.

---

Decided: August 21, 2020

---

SEAN S. TWOMEY, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, argued for claimant-appellant. Also represented by ANDREW T. BROWN.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ETHAN P. DAVIS, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRANDON A. JONAS,

Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before DYK, TARANTO, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Sally Burkhart, the widow of a United States Army veteran, appeals the decision of the Court of Appeals for Veterans Claims denying her eligibility for home loan guaranty benefits from the Department of Veterans Affairs under title 38, chapter 37. We conclude that, as the surviving spouse of a veteran without a service-connected disability, Ms. Burkhart is not eligible for home loan guaranty benefits under any of the statutes she relies upon. And, the Veterans Court correctly determined that it lacked the power to grant her equitable relief. We therefore affirm the decision of the Veterans Court.

I

Ms. Burkhart is the widow of U.S. Army veteran David Burkhart, who served honorably from August 1952 to July 1954 in the Korean War and was awarded two Bronze Stars. He had no service-connected disabilities during his life. Mr. Burkhart's health declined in the late 1990s, and he was admitted to a VA inpatient nursing facility. He died soon after, while still in VA care.

Ms. Burkhart then filed a claim for dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 1151 (chapter 11). Section 1151 provides for compensation related to the death or injury of a veteran in certain circumstances while the veteran was under VA care.

> Compensation under this chapter [11] and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a

> veteran in the same manner as if such additional
> disability or death were service-connected.

38 U.S.C. § 1151(a) (2012).  For example, an award is made when the disability or death was caused by "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault" in the VA care or by "an event not reasonably foreseeable."  *Id.* § 1151(a)(1).  Having determined that Mr. Burkhart's "death [while in VA care] was due to an event not reasonably foreseeable," VA granted Ms. Burkhart's request for DIC benefits.  *Burkhart v. Wilkie*, 30 Vet. App. 414, 416 (2019) (alteration in original); *see* 38 U.S.C. § 1151(a)(1)(B).  But, as the Veterans Court later made clear, "[t]here [was] no indication that the cause of [Mr. Burkhart's] death was related to a service-connected disability or that [Ms. Burkhart] claimed service connection in connection with [Mr. Burkhart's] death." *Burkhart*, 30 Vet. App. at 416.

In 2007, Ms. Burkhart sought a certificate of eligibility (COE) for home loan guaranty benefits available under title 38, chapter 37 of the U.S. Code.  VA issued her a COE that same year, but she never finalized a loan.  Six years later, in 2013, she requested a new COE for a home loan guaranty.  This time, VA determined that Ms. Burkhart was ineligible for home loan guaranty benefits and that the initial 2007 COE had been erroneously issued. Ms. Burkhart disputed VA's decision and eventually appealed it to the Board of Veterans' Appeals.

The Board found that Mr. Burkhart had no service-connected disabilities during his lifetime.  Nor did he die of a service-connected disability.  And, because chapter 37 home loan guaranty benefits are available only to, as relevant here, "the surviving spouse of any veteran . . . who died from a service-connected disability," 38 U.S.C. § 3701(b)(2) (2012), and Mr. Burkhart did not otherwise meet the criteria in 38 U.S.C. § 3701(b)(6),  the Board

confirmed that Ms. Burkhart was indeed ineligible for home loan guaranty benefits.

Ms. Burkhart appealed three legal issues from the Board's decision to the Veterans Court: (1) "whether a veteran's surviving spouse who is entitled to [DIC] under 38 U.S.C. § 1151 is also thereby entitled to ancillary home loan guaranty benefits under title 38, chapter 37"; (2) "whether 38 U.S.C. § 3721 . . . bars VA from contesting a surviving spouse's eligibility once the Agency has issued a COE before a loan is issued"; and (3) "whether the Court may use equitable principles to grant these home loan guaranty benefits and order VA to guarantee a loan by employing equitable estoppel, waiver, laches, or injunctive relief." *Burkhart*, 30 Vet. App. at 415–16.

The Veterans Court majority affirmed the Board's decision that Ms. Burkhart was ineligible for home loan guaranty benefits under the plain language and legislative history of § 1151 and § 3701. *Id.* at 417–21. Judge Greenberg dissented on this issue, concluding that Ms. Burkhart "was entitled to the home loan guaranty benefits ancillary to her section 1151 dependency and indemnity benefits." *Id.* at 427–29.

The Veterans Court also held that 38 U.S.C. § 3721—the so-called incontestability provision—applies only to "the relationship between the Government and lending institutions such as banks, not the Government and COE recipients, and as to the documents guaranteeing the loan, not a COE." *Id.* at 421. Section 3721 states:

> Any evidence of guaranty or insurance issued by the Secretary shall be conclusive evidence of the eligibility of the loan for guaranty or insurance under the provisions of this chapter and of the amount of such guaranty or insurance. Nothing in this section shall preclude the Secretary from establishing, as against the original lender, defenses based on fraud or material misrepresentation. The

> Secretary shall not, by reason of anything contained in this section, be barred from establishing, by regulations in force at the date of such issuance or disbursement, whichever is the earlier, partial defenses to the amount payable on the guaranty or insurance.

38 U.S.C. § 3721.   The Veterans Court reasoned that, first, § 3721 refers only to the Secretary and lenders, not individual beneficiaries like Ms. Burkhart; second, § 3721 encompasses "[a]ny evidence of guaranty," which, read in light of other sections of chapter 37, refers to the stage of the loan process where a loan has been procured, not an early stage like obtaining a COE; and, third, the legislative history of § 3721 illustrates Congress's desire to incentivize a secondary market in VA guaranteed loans.  *Burkhart*, 30 Vet. App. at 421–25.

Finally, the Veterans Court denied Ms. Burkhart's requests for equitable relief based on injunctive relief, equitable estoppel, laches, and waiver.  *Id.* at 425.  Broadly, the Veterans Court concluded that to grant Ms. Burkhart relief "based solely on equity would expand the scope of [its] jurisdiction."  *Id.* at 426.  The court also explained that Ms. Burkhart would have had to prevail on the merits before the court could grant an injunction.  *Id.*  Second, equitable estoppel has not been applied against the government as a matter of common law, and where it is available, Congress has created it by statute.  *See id.* at 426–27.  Here, however, the Veterans Court reasoned that the incontestability provision reflects Congress's intent that only lenders receive this privilege of estoppel.  *Id.*  The Veterans Court also dismissed Ms. Burkhart's assertions of laches and waiver because those two equitable principles are equitable defenses, not affirmative theories of relief.  *Id.* at 427.

The Veterans Court entered judgment on January 28, 2019.  Ms. Burkhart timely appealed.  We have jurisdiction under 38 U.S.C. § 7292.

## II

We review de novo the Veterans Court's interpretation of statutes. *Wanner v. Principi*, 370 F.3d 1124, 1128 (Fed. Cir. 2004); *see* 38 U.S.C. § 7292(c). On appeal, Ms. Burkhart raises the same three legal issues that she did before the Veterans Court. We address each in turn.

## A

Ms. Burkhart argues that the Veterans Court erred in interpreting § 1151(a) and § 3701(b)(2) to exclude widowed spouses like her from home loan guaranty benefits under chapter 37. She reasons that she should be eligible for a home loan guaranty because § 3701(b)(2) defines a veteran eligible for chapter 37 benefits as "the surviving spouse of any veteran . . . who died from a service-connected disability," § 3701(b)(2). Though her husband did not die from a service-connected disability, Ms. Burkhart argues that this definition still includes her because § 1151(a) requires treating her husband's death "as if" it was service-connected for all purposes.

The plain language of § 1151(a) contradicts Ms. Burkhart's argument. It expressly provides for compensation "as if" the disability or death were service-connected only for the purposes of chapter 11 and chapter 13 benefits. *See* § 1151(a) (specifying "[c]ompensation under this chapter [11] and [DIC] under chapter 13").[1] But VA's home loan guaranty program falls under chapter 37. By expressly enumerating the chapters to which it applies, § 1151 does not redefine a service-connected death or disability for all benefits; it merely "provides an exception that

---

[1] Note that § 1151(c) also provides for treating an "additional disability under this section . . . as if it were a service-connected disability" for title 38, chapters 21 and 39. Again, this provision does not include chapter 37 benefits.

grants compensation for some non-service-connected disabilities, treating those disabilities for some purposes 'as if' they were service-connected." *Alleman v. Principi*, 349 F.3d 1368, 1370–71 (Fed. Cir. 2003) (quoting § 1151(a)).

Attempting to sidestep this plain language, Ms. Burkhart cites our decision in *Kilpatrick v. Principi*, 327 F.3d 1375 (Fed. Cir. 2003), as proof that we have previously expanded the benefits available to a § 1151 beneficiary beyond those provided in chapters 11 and 13. Indeed, in *Kilpatrick*, we concluded that a § 1151 beneficiary was entitled to receive special adaptive housing benefits under 38 U.S.C. § 2101, even though those benefits fall under chapter 21, not chapters 11 or 13. The Veterans Court correctly distinguished *Kilpatrick* from the case at hand in multiple respects. In particular, the *Kilpatrick* panel concluded that the language of § 2101 was not clear and resorted to legislative history. *Kilpatrick*, 327 F.3d at 1378–79, 1381–82. That history led the *Kilpatrick* panel to conclude that § 1151 did encompass § 2101 benefits because the predecessor to § 1151 originally provided benefits for the predecessor to § 2101, although the 1957 recodification of title 38 inadvertently separated the two provisions, *id.* at 1381. The *Kilpatrick* panel therefore concluded that Congress originally intended for § 1151 to encompass the special adaptive housing benefits under § 2101 at issue there. *Id.* at 1382–83.[2]

---

[2]    Bolstering our conclusion that § 1151 does not extend chapter 37 benefits to Ms. Burkhart is that, after *Kilpatrick*, Congress added § 1151(c), which extended the "as if" service connection to chapter 21 and chapter 39 benefits. Veterans Benefits Improvement Act, Pub. L. No. 108-454, § 304, 118 Stat. 3598, 3611 (2004). But Congress made no change to § 1151(a), or elsewhere, that would treat chapter 37 benefits similarly.

But, as the Veterans Court explained in detail in this case, § 1151 and the benefits of chapter 37 have no such shared lineage. *See Burkhart*, 30 Vet. App. at 419–20. We therefore agree with the Veterans Court that Ms. Burkhart's *Kilpatrick*-based arguments are unavailing.

B

Ms. Burkhart next argues that under 38 U.S.C. § 3721—the incontestability provision—VA cannot now dispute the validity of the COE it issued her, albeit errone-ously, in 2007. We disagree for two reasons: (1) the incon-testability provision applies only to the relationship between the lending institution and VA; and (2) the incon-testability provision applies only once a loan is issued.

First, § 3721 makes no reference to a loan beneficiary like Ms. Burkhart; it only refers to the Secretary and "the original lender." 38 U.S.C. § 3721. This strongly implies that Congress intended § 3721 to govern only the relation-ship between the Secretary and lenders. Indeed, as the Veterans Court commented, "it would be odd if the provi-sion were focused on a beneficiary when that person is never mentioned." *Burkhart*, 30 Vet. App. at 422.

That the incontestability provision applies only to the relationship between VA and lenders—not beneficiaries— is also supported by the lending process described in 38 U.S.C. § 3702(c). *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole." (internal quotation marks and citations omitted)). The first step to receiving a loan involves establishing the veteran's eligibility.[3] "An

---

[3]    As discussed in Section I, *supra*, the eligible vet-eran includes the "the surviving spouse of any veteran . . .

honorable discharge shall be deemed to be a certificate of eligibility to apply for a guaranteed loan." § 3702(c). Alternatively, the veteran "may apply to the Secretary for a certificate of eligibility." *Id.* Then, "[u]pon making a loan guaranteed or insured under this chapter" the lender notifies the Secretary of the required details of the loan and the Secretary in turn provides the lender "with a loan guaranty certificate or other evidence of the guaranty." *Id.* It is that "loan guaranty certificate or other evidence of the guaranty" that is the focus of § 3721—not the COE obtained earlier in the process.

The lending process described in § 3702(c) also supports that § 3721 does not apply in cases such as this one, where no loan was ever issued.[4] If a potential beneficiary like Ms. Burkhart never receives a loan, there simply is no loan guaranty to contest. There is only what chapter 37 repeatedly refers to as "guaranty entitlement" or "guaranty or insurance housing loan entitlement." *See, e.g.*, 38 U.S.C. §§ 3702(b), 3703(a)(1)(B)–(C). This is not the same as a guaranty. *Compare* 38 U.S.C. § 3703(a)(1)(A)(i) (describing when a loan is "automatically guaranteed" and for what maximum amount), *with* § 3703(a)(1)(A)(ii) (discussing "the maximum amount of *guaranty entitlement* available to the veteran") (emphasis added). We apply "the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).

---

who died from a service-connected disability."   38 U.S.C. § 3701(b)(2).

[4]    Because such a case is not before us, we leave for another day the question of whether the incontestability provision would apply on a different set of facts, such as where a lender did in fact issue a loan based only on a COE.

And, as the Veterans Court described, it makes sense that a guaranty is not issued until a loan is made because, even with a valid COE, a qualified beneficiary is necessary, but not sufficient, for a home loan under the VA home loan program. "Just because a *person* is eligible to participate in the program does not mean that the program will guarantee any *loan* he or she wants. The loan must also meet separate requirements." *Burkhart*, 30 Vet. App. at 423 (emphasis in original). *See* 38 U.S.C. § 3703(a)(1). For example, a loan is automatically guaranteed only if it is for certain types of property, like property that is "owned and occupied by the veteran as a home." 38 U.S.C. § 3710(a).

We note that very little case law helpfully addresses the incontestability provision. Ms. Burkhart, however, argues that the First Circuit's decision in *Mt. Vernon Cooperative Bank v. Gleason*, 367 F.2d 289 (1st Cir. 1966), squarely establishes that the incontestability provision resolves her case in her favor. There, the First Circuit observed that: "[T]he first sentence of section [3721], the incontestability provision, concerns only the Administration's certificate that a particular veteran is eligible for a guaranty . . . and that he is entitled to a specified maximum amount." *Id.* at 291–92. Even if *Mt. Vernon* were binding on this court, this quoted language is ambiguous, at best, especially since it appears no COE was involved in that case at all. *See, e.g.*, *id.* at 290 (detailing that, after the fraudulent beneficiary applied for the loan, "the bank forwarded the papers to the [VA] with a request that the [VA] issue a loan guaranty certificate" which the VA subsequently issued as a "loan guaranty"). We agree with the Veterans Court that *Mt. Vernon* is only "marginally relevant" and contains "seemingly contradictory observations, none of which are helpful to the inquiry and all of which are dicta." *Burkhart*, 30 Vet. App. at 424 n.1.

Read as "an harmonious whole" with the entirety of chapter 37, *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133, the incontestability provision therefore cannot aid

Ms. Burkhart in her quest for a home loan guaranty.  Section 3721 operates (1) as to the loan guaranty between VA and the lender and (2) only once a lender has actually issued a loan.

C

Beyond her two statutory arguments, Ms. Burkhart asserts that the Veterans Court erred in declining to grant her requested equitable relief.  Again, we disagree.

Our recent decision in *Burris v. Wilkie*, 888 F.3d 1352 (Fed. Cir. 2018), addresses the limited scope of the Veterans Court's equitable powers.  We reasoned that, through 38 U.S.C. § 503(b), Congress provided certain equitable powers to the Secretary of Veterans Affairs—"including the payment of moneys to any person whom the Secretary determines is equitably entitled."  *Id.* at 1358 (citing § 503(b)).  But it did not provide similar powers to the Veterans Court, an Article I tribunal whose jurisdiction is limited by statute.  *Id.* at 1357.  These statutes "make clear that the Veterans Court is statutorily permitted to review Secretary decisions involving legal and factual questions related to statutory benefits"—but not necessarily the "extra-statutory relief that [the *Burris*] Appellants" sought.  *Id.* at 1358.  And, the fact that § 503(b) is "[t]he only provision in title 38 that addresses equitable relief in this context," indicates that Congress did not intend for the Veterans Court's jurisdiction to encompass such equitable powers.  *Id.*

Ms. Burkhart attempts to distinguish *Burris* because there the appellants' equitable requests were monetary, whereas a home loan guaranty, she argues, is not—because the beneficiary may never default.  The Veterans Court correctly identified this as a distinction without a difference.  *Burkhart*, 30 Vet. App. at 426.  A home loan guaranty that will not provide a monetary benefit to the lender in the case of default is of little use to the beneficiary or the lender.  As in *Burris*, where we held that a request for "equitabl[e]

tolling [of] the time limit for the benefit . . . is functionally equivalent to one for retroactive [Dependents' Education Assistance] benefits," 888 F.3d at 1357, a request for entitlement to a home loan guaranty is also monetary in nature.

Ms. Burkhart also claims that *Burris* does not apply to her because she did not "suffer[ a] loss as a consequence of reliance upon a determination by [VA] of eligibility or entitlement to benefits." 38 U.S.C. § 503(b). So, she says, she is not seeking relief under § 503 and *Burris* does not govern. But the fact that Congress made only one express provision for the Secretary to grant equitable relief in limited circumstances, in the form of § 503, indicates that it did so to the exclusion of other exceptions for the Secretary's equitable powers. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

In sum, the Veterans Court provided a thorough analysis of *Burris* and correctly determined that neither that precedent, nor any statute, would allow the Veterans Court to "accept[] the appellant's invitation to exercise equitable power in this context [because it] would inappropriately expand [its] jurisdiction." *Burkhart*, 30 Vet. App. at 425. Because we affirm the Veterans Court decision in this respect, we decline to opine on the application of the equitable defenses Ms. Burkhart asserted below.

## III

We have considered Ms. Burkhart's remaining arguments and find them unpersuasive. By the plain language of § 1151 and § 3702, Ms. Burkhart is ineligible for a VA home loan guaranty. Further, the incontestability provision does not apply to her. Finally, the Veterans Court correctly determined it did not have jurisdiction to grant the equitable relief she requested. We therefore affirm the judgment of the Veterans Court.

BURKHART v. WILKIE                                                        13

## AFFIRMED

No costs.